**UNITED STATES of America,**

v.

**Adam NEZAJ, Defendant.**

**No. SS 87 Cr. 258 (RWS).**

United States District Court,
S.D. New York.

March 12, 1987.

Rudolph W. Giuliani, U.S. Atty. for S.D. N.Y., New York City, for U.S.; Deirdre M. Daly, Asst. U.S. Atty. of counsel.

Joseph R. Benfante, P.C., New York City, for defendant; Joseph R. Benfante, of counsel.

## OPINION

SWEET, District Judge.

This is an application by the government to revoke the bail set on February 10, 1987 by the Honorable Kathleen A. Roberts, Magistrate, in this proceeding. A hearing was held on March 10 and 11, at which the government presented the transcript of the hearing before the Magistrate and additional evidence as well. Upon the following findings and conclusions, bail will be granted upon the conditions set by the Magistrate, modified by the addition of several minor conditions such as daily drug testing.

**Prior Proceedings**

Under the circumstances set forth in the court's March 11, 1987 findings of fact from the bench, Adam Nezaj ("Nezaj") was arrested on February 6, 1987. The same day the defendant appeared before the Honorable Ruth Washington, Magistrate, who set down a detention hearing for February 10, 1987. On February 10, Magistrate Roberts presided over Nezaj's first detention hearing. After a hearing concerning Nezaj's arrest on February 6, 1987 in the course of which he shot one of the arresting officers (the transcript runs 69 pages), Magistrate Roberts held: "I do not think that the government has shown—by a preponderance of the evidence in the case of flight or a clear and convincing evidence in the case of danger—that there is no condition or combination of conditions that can reasonably assure the appearance of the defendant or the safety of the community."

With respect to flight, the Magistrate based her findings on Nezaj's deep roots in the community and the availability of a fairly substantial defense. With respect to dangerousness, the Magistrate found that the government proved that Nezaj would be a danger to the community, but found his dangerousness so tied to his drug addiction that it would be sufficiently abated by requiring Nezaj to enter a residential drug treatment program: "the danger that he poses in terms of his narcotic activities and access to weapons will essentially be eliminated by the fact that he will be in effect incarcerated."

The government obtained a stay of the Magistrate's decision pending application for review by this court, which apparently was sought and granted *ex parte* because Nezaj's counsel for the hearing had been relieved and new counsel had not yet been retained. The Magistrate set bail at $500,-000 to be secured by $50,000 in cash and fully secured up to the amount of $500,000 by property, on the condition that the defendant be placed in a residential drug treatment program.

On March 10, 1987 the government's appeal from Magistrate Roberts' order was heard. The government proceeded by proffer, as well as by evidence presented on March 11. Nezaj presented his case by cross-examination and by proffer. Certain evidence was presented which was not proffered to Magistrate Roberts.

At the conclusion of the hearing, the court made findings of fact from the bench, which need not be repeated but are incorporated herein. In essence, the court agreed with the Magistrate's conclusion that conditions could be set that would guarantee the defendant's return. Put together, Nezaj's educational background, his substantial real estate holdings, and his ties to his family and the community, overcome the presumption of flight invoked by the government under the statute, even

given that the presumption is entitled to some weight once the defendant comes forward with evidence to rebut it. *See United States v. Martir,* 782 F.2d 1141, 1144 (2d Cir.1986).[1] Likewise, the court agreed that Nezaj poses a danger to society. Unlike the Magistrate, however, the court concluded that the government had established by clear and convincing evidence that "no condition or combination of conditions will reasonably assure the safety of ... the community." 18 U.S.C. § 3142(e) and (f), given the irrational character of Nezaj's resistance to arrest and his shooting of a government agent.

**Discussion**

 The last two times that the Second Circuit has dealt with the dangerousness branch of the pretrial detention provisions of the Bail Reform Act of 1984, it has been held to be unconstitutional. The first Second Circuit case to face the constitutional issue directly was *United States v. Melendez-Carrion,* 790 F.2d 984 (2d Cir.1986). The Honorable Jon O. Newman's opinion in the case details how detention for dangerousness breaks radically not merely with the history of bail in the United States, but more importantly, with fundamental notions that define liberty in this freest of nations:

The systems of criminal justice contemplated by the Due Process Clause—indeed, by all of the criminal justice guarantees of the Bill of Rights—is a system of announcing in statutes of adequate clarity what conduct is prohibited and then invoking the penalties of the law against those who have committed crimes. The liberty protected under that system is premised on the accountability of free men and women for what they have done, not for what they may do.

*Id.* at 1001. That a competent adult may be jailed, before conviction of any crime, because government officers consider him "dangerous to the community" under the terms of what the government styles a "regulatory" provision is too close to "a police state approach," *id.* at 1000, for the Constitution to countenance. Consequently, Judge Newman held that the dangerousness provision violated substantive due process.

Chief Judge Feinberg joined in Judge Newman's result, but concluded that whether pretrial detention is ever "regulatory" or constitutional for short periods, detention for dangerousness for the more than eight months that the *Melendez-Carrion* defendants had endured was punishment without adjudication of guilt, and hence violated due process. *Id.* at 1005. He left for another day whether detention for dangerousness for shorter times also violated due process. *Id.*

---

**1.** Generally, in a criminal case, a mandatory presumption such as this may not be used to undercut a constitutionally required standard of proof. *See generally County Court of Ulster County v. Allen,* 442 U.S. 140, 99 S.Ct. 2213, 60 L.Ed.2d 777 (1979). Under § 3142, if the presumed fact (flight) does not follow from the basic fact (that the defendant is charged with violations of certain specified statutes) with the same level of certainty that the Constitution requires for detention on the grounds of flight, then the presumption itself may be unconstitutional. There is a strong indication that Congress' legislative judgment is unsupported factually. Because the presumptions were not included in any version of the bill considered during the hearings, most of the statistics offered on flight and rearrest contain no breakdowns for the targeted groups. *See, e.g., Bail Reform: Hearings on Bills to Amend the Bail Reform Act of 1966 Before the Subcomm. on the Constitution of the Senate Comm. on the Judiciary,* 97 Cong., 1st Sess. at 2 (1981) (Sen. Hatch citing general statistics). Similarly, in 1981 Chairman Leo Zeferetti of the House Select Committee on Narcotics Abuse and Control noted: "We have been trying to discern the actual number of narcotics cases of defendants who in fact jump bail and fail to appear. There are apparently no numbers that are meaningful. Many of the numbers that are tossed around that we have, often cannot be substantiated." *Bail Reform and Narcotics: Hearings Before House Select Comm. on Narcotics Abuse and Control,* 97th Cong., 1st Sess. at 21 (1981).

Because of the strength of Nezaj's showing, in this case, the government has failed to show by the preponderance of evidence that his appearance could not be assured, despite the weight of the presumption. Consequently, the issue is not before the court. As to the presumption of dangerousness, the government's showing was strong enough to establish its case without the help of the presumption, so its constitutionality is not before the court either.

That other day came in *United States v. Salerno*, 794 F.2d 64 (2d Cir.1986). Writing for the court, the Honorable Amalya L. Kearse explicitly adopted Judge Newman's reasoning, quoting extensively from his opinion in *Melendez-Carrion*. *Salerno* could scarcely be more clear: "the Due Process Clause prohibits pretrial detention on the ground of danger to the community as a regulatory measure, without regard to the duration of the detention." 794 F.2d at 71.

The government's position in this case is that because the *Salerno* court has withheld the mandate in *Salerno* pending the Supreme Court's expected resolution of the issue, *Salerno* has no precedential force. *See Merrimack River Savings Bank v. City of Clay Center*, 219 U.S. 527, 536, 31 S.Ct. 295, 296, 55 L.Ed. 320 (1911). Despite the unequivocal language in *Salerno*, the government would have this court construe the stay in the mandate as a command from the Circuit to leave "the statutory program undisturbed."

Whether or not *Salerno* controls as precedent, it is mightily persuasive, both in terms of its substance and its source. And even accepting that *Salerno* is not technically controlling, the Second Circuit's last word on the constitutionality of the dangerousness provision was *Melendez-Carrion*, in which one judge found that the provision violated due process as it was applied and the other judge held that it violated due process period.

During World War II, heeding warnings of "the gravest imminent danger to the public safety," the courts upheld the mass regulatory relocation and detention of Americans of Japanese descent. *Korematsu v. United States*, 323 U.S. 214, 218, 65 S.Ct. 193, 195, 89 L.Ed. 194 (1944). That episode has demonstrated the breadth of the concept of "dangerousness." Jailing people to protect society "may be accomplished only as punishment of those convicted for past crimes and not as regulations of those feared likely to commit future crimes." *Melendez-Carrion*, 790 F.2d at 1001.

I adopt the views of the opinions of Judge Kearse in *Salerno* and Judge Newman in *Melendez-Carrion*, assuming *arguendo* that neither is technically precedentially binding, and consequently hold that the dangerousness prong of the detention provisions of the Bail Reform Act of 1984 is unconstitutional. Magistrate Roberts' bail recommendations will consequently stand, subject to the minor alternations announced from the bench on March 11, 1987.

IT IS SO ORDERED.