UNITED STATES of America, Plaintiff,

v.

Daniel MALLOY, Defendant

No. 98–177 (AMW).

United States District Court,
D. New Jersey.

July 10, 1998.

Brian J. Neary, Hackensack, NJ.

Faith S. Hochberg, U.S. Attorney, Noel L. Hillman, Assistant U.S. Attorney, Colleen C. Piccone, Special Assistant, U.S. Attorney, Newark, NJ, for U.S.

## OPINION

WOLIN, District Judge.

Daniel Malloy ("Malloy") moves this Court to review and reverse Magistrate Judge Cavanaugh's denial of his motion to modify his bail conditions from twenty-four hour electronic monitoring to a curfew restriction. While the matter was pending, Malloy requested this Court to authorize the use of a satellite tracking system to monitor his movements while away from home.

## BACKGROUND

Malloy was arrested on February 27, 1998, and charged with violating the Arms Export Control Act, 22 U.S.C. § 2778. On March 6, 1998, the Government moved for Malloy's detention pursuant to 18 U.S.C. § 3142.

United States Magistrate Judge Cavanaugh denied the Government's motion and set bail at $2.5 million with several conditions, including: (1) Malloy was placed under house arrest, required to wear an electronic monitor, and could only leave his home for medical emergencies, to attend church, and to meet with his attorneys; (2) he and his family had to surrender their passports; (3) operation of Malloy's business had to be turned over to his wife, and he could go to the place of business only for purposes of this case; and (4) Malloy had to provide the Government with copies of his tax returns and to disclose all of his assets. It is undisputed that Malloy has complied with these conditions.

On March 24, 1998, a federal grand jury indicted Malloy for conspiracy, in violation of 18 U.S.C. § 371, and for violating the Arms Export Control Act, 22 U.S.C. § 2778. On April 7, 1998, this court arraigned Malloy and continued the bail conditions as set by Magistrate Judge Cavanaugh.

On May 7, 1998, Malloy moved to modify the first bail condition, i.e., that he be removed from electronic monitoring and be subject to a curfew restriction. On May 11, 1998, Magistrate Judge Cavanaugh denied this request. A review of this motion is currently pending before the Court. For purposes of this review, Malloy has modified his request to permit him to leave home during the hours of his children's after-school and summer activities subject to a different form of electronic monitoring, namely, the use of a satellite tracking system.

The tracking system provides more freedom of movement than electronic monitoring/house arrest. The technology uses the Global Positioning System designed for military use in the 1970's and consists of twenty-four satellites orbiting Earth. See Jean Rimbach, *N.J. Tests Satellites to Monitor Juvenile Parolees*, Bergen Record, April 1, 1988, at A1. Defendants monitored by the system wear a wrist or ankle band and carry a tracking unit that is about the size of laptop computer. Signals from the satellites and tracking unit are transferred to a communications center that plots where the defendant has been and at what time. In addition, certain "exclusion zones" can be created. When the defendant is not in close proximity to the tracking unit or enters an exclusion zone, Pretrial Services would be notified within minutes that a violation occurred.

## DISCUSSION

■ Courts must endeavor to impose the least restrictive bail conditions that will assure both the defendant's appearance at trials as well as the public's safety. See 18 U.S.C. § 3142(c); *United States v. Himler*, 797 F.2d 156, 159 (3d Cir.1986). Subsection (g) of § 3142 identifies certain factors the Court should use in determining "whether there are conditions of release that will reasonably assure the appearance of the person as required and the safety of any other person and the community." These factors include: (1) the nature and circumstances of the offense; (2) the weight of the evidence against the defendant; (3) the nature and seriousness of the danger posed by the defendant's release; and (4) the history and characteristics of the defendant such as community and family ties, employment record, history of alcohol or drug abuse, criminal history, and whether the defendant was on probation or parole at the time of the offense. *See id.*

■ In making this motion, Malloy reminds the Court that he secured the $2.5

million bail with $1 million in cash and four pieces of property located in New York, New Jersey and Florida. He also relies on his close family and community ties. In fact, his motion was premised on the need to be available for his children's after-school and summer activities. Moreover, Malloy and his family have surrendered their passports, and he has expressed a willingness to participate in and pay for the satellite monitoring.

The Government initially opposed any change in the bail conditions imposed by Magistrate Judge Cavanaugh. However, upon application by the defendant, the Government was willing to participate in an investigation of the satellite tracking system as a means to monitor Malloy's away-from-home activities. In fact, Thomas Henry, Director of Pretrial Services in the District of New Jersey, and other members of Pretrial Services met with representatives of Advanced Business Sciences of Omaha, Nebraska, the company that developed the particular system considered for use in this case, to explore the system's practical application and to identify any potential limitations. As a result of an extensive month-long investigation, Pretrial Services has given this Court its approval of the tracking system. Therefore, the Court must decide whether it is satisfied that the modified bail conditions, including implementation of the satellite tracking system, are sufficient to assure that Malloy will appear for trial.

In an analogous case, *United States v. Lopez,* 827 F.Supp. 1107 (D.N.J.1993), this Court approved the use of what was then cutting edge technology—thermal imaging—to modify a detention order for Lopez. Since then, new technology has been developed as part of an increasing trend to monitor the whereabouts of defendants awaiting trial through methods other than costly imprisonment. The satellite tracking system proposed for Malloy is used in several States to monitor probationers and parolees. However, this would be the first time it would be used in the Federal system.

The Court recognizes the seriousness of the offense with which Malloy is charged. The Court must, however, balance the seriousness of the offense with the presumption of innocence enjoyed by Malloy and the need to set the least restrictive bail condition to ensure that Malloy appears at trial.

In this instance, the Court is satisfied that the combination of the satellite-tracking system and the current bail conditions placates the interest that Malloy will appear at trial because the satellite-tracking system provides a sufficient level of control over Malloy's whereabouts. In addition, the Court finds comfort in the fact that Malloy is being granted the privilege of leaving his house for limited activities. Finally, Pretrial Services' stamp of approval, the Government's lack of an objection, the current bail restrictions and Malloy's faithful compliance with these restrictions, and the new bail restrictions that the Court will impose today have persuaded the Court to embark on a new path for monitoring a pre-trial detainee. The Court will closely supervise the new bail conditions to ensure that they provide the Government and Pretrial Services with the appropriate level of security as to Malloy's risk of flight.

Accordingly, the Court will order that: (1) Pretrial Services test the satellite tracking system prior to implementation to ensure it functions properly; (2) Malloy can leave home for activities that are pre-approved by Pretrial Services; (3) Malloy must consult with Pretrial Services on a weekly basis regarding his schedule for the week; (4) Malloy must sign a series of conditions that are consistent with those conditions now in place for electronic monitoring; (5) Pretrial Services must establish exclusion zones to ensure that Malloy will not visit those places most representing a risk of flight, i.e., airports; (6) the phone monitoring system that is currently in place will continue as a backup until the Court is satisfied that the system is effective; (7) Malloy must pay the costs associated with the tracking system; and (8) all other bail conditions are to remain the same.

### CONCLUSION

Defendant's motion to modify his bail conditions will be granted consistent with the conditions outlined above.