UNITED STATES of America,
Plaintiff–Appellee,

v.

Carl J. WARNEKE, Harvey E. Powers,
and Allen J. McVay, Defendants–
Appellants.

Nos. 99–1927, 99–1928, 99–1961.

United States Court of Appeals,
Seventh Circuit.

Argued Nov. 9, 1999.

Decided Dec. 9, 1999.

Eric J. Klumb (argued), Thomas P. Schneider, Office of the United States Attorney, Milwaukee, WI, for Plaintiff–Appellee.

Richard H. Parsons, Office of the Public Defender, Peoria, IL, Pamela Pepper (argued), Cubbie & Pepper, Milwaukee, WI, for Defendant–Appellant Warneke.

Christopher T. Van Wagner, Madison, WI, Pamela Pepper (argued), Cubbie & Pepper, Milwaukee, WI, for Defendant–Appellant Powers.

Pamela Pepper (argued), Cubbie & Pepper, Milwaukee, WI, for Defendant–Appellant McVay.

Before COFFEY, MANION, and EVANS, Circuit Judges.

TERENCE T. EVANS, Circuit Judge.

In May of 1997, 17 alleged members of the Outlaws Motorcycle Club were indicted on, among other things, racketeering charges. The indictment listed 34 predicate acts of racketeering activity, including allegations of robbery, murders, arson, drug distribution, and transportation of explosives in interstate commerce. The three defendants on this appeal—Carl Warneke, Harvey Powers, and Allen McVay—were among the indictees.

■ Most of the defendants, including our three, were ordered into detention when arrested soon after the indictment was returned. But no trial was held. The indictment was dismissed 17 months later in October of 1998 by Chief Judge J.P. Stadtmueller. Because the dismissal was based on technical grounds that were easily curable, the judge ordered the defendants to remain in custody for a short time (not to exceed 30 days) pending the return of a superseding indictment. As expected, the defendants were re-charged when a superseding indictment was handed up in November of 1998. The new indictment was virtually identical to the one it replaced. When the superseding indictment was returned, 12 of the original defendants, including our 3, had been in custody for all 17 months that the case was pending. Subsequently the defendants moved to dismiss the superseding indictment, claiming that their constitutional rights against double jeopardy were violated. They argued that the time spent in custody before the return of the second indictment was punishment, and therefore the Double Jeopardy Clause prevented the government from punishing them again through the return of the superseding indictment and their continued detention.

Magistrate Judge William E. Callahan, Jr., to whom the defendants' motion was referred, concluded that the 17–month incarceration did not violate the Double Jeopardy Clause (or the Due Process Clause). He concluded that although the government was responsible for *some* of the delay, the main reason the case moved slowly was its "massive nature and complex scope." The magistrate judge's recommendation to Chief Judge Stadtmueller to deny the motion to dismiss was accepted. The defendants appeal.

■ The denial of a motion to dismiss on double jeopardy grounds is appealable. *Abney v. United States*, 431 U.S. 651, 97 S.Ct. 2034, 52 L.Ed.2d 651 (1977). But this appeal can't leave the starting gate.

*North Carolina v. Pearce*, 395 U.S. 711, 717, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969), holds that the double jeopardy guarantee consists of three separate constitutional protections: it protects against a second prosecution for the same offense after acquittal; it protects against a second prosecution for the same offense after conviction; and it protects against multiple punishments for the same offense. The only ground that conceivably fits here is the last one, and that's not a very good fit at all. But the defendants try to wedge into that niche based on a novel reading of *Department of Revenue of Montana v. Kurth Ranch*, 511 U.S. 767, 114 S.Ct. 1937, 128 L.Ed.2d 767 (1994).

The defendants claim that the Double Jeopardy Clause's prohibition against multiple punishment can be applied in cases where a defendant has never been prosecuted. Unfortunately, that's too much of an argument for *Kurth Ranch* to carry.

In *Kurth Ranch*, the defendants were convicted and sentenced after pleading guilty to drug charges. Later, the State of Montana sought to impose a drug tax on the defendants based on the same criminal conduct. The Supreme Court held that Montana's drug tax was "the functional equivalent of a successive criminal prosecution," 511 U.S. at 784, 114 S.Ct. 1937, and so the Court concluded that the double jeopardy clause precluded the imposition of the tax penalty after the underlying drug prosecutions were wrapped up.

■ The analytical approach employed in *Kurth Ranch*, which actually came from *United States v. Halper*, 490 U.S. 435, 109 S.Ct. 1892, 104 L.Ed.2d 487 (1989), was jettisoned in *Hudson v. United States*, 522 U.S. 93, 118 S.Ct. 488, 139 L.Ed.2d 450 (1997), but that's the least of the defendants' problems. The bigger problem is that *Kurth Ranch* did nothing to alter the "fundamental principle that an accused must suffer jeopardy before he can suffer double jeopardy." *Serfass v. United States*, 420 U.S. 377, 393, 95 S.Ct. 1055, 43 L.Ed.2d 265 (1975). In *Kurth Ranch* the Supreme Court held that the imposition of a drug tax against a *convicted* defendant constituted a second punishment, but the Court never suggested that the tax would be prohibited absent the prior "attachment" of jeopardy. Similarly, if the tax had been levied prior to the drug prosecution, the Supreme Court would then have had to determine whether the taxing procedure resulted in the attachment of jeopardy.

■ Pretrial detention does not trigger the attachment of "jeopardy" so as to invoke the protection of the Double Jeopardy Clause. *See United States v. Grisanti*, 4 F.3d 173 (2d Cir.1993). And, the statute authorizing pretrial detention, 18 U.S.C. § 3142, is remedial, not punitive. In *United States v. Salerno*, 481 U.S. 739, 107 S.Ct. 2095, 95 L.Ed.2d 697 (1987), the Supreme Court held that detention pursuant to 18 U.S.C. § 3142(e) did not, on its face, even violate the Due Process Clause because it was not punishment. The focus of a pretrial detention hearing is to determine whether there are conditions of release that can reasonably assure the appearance of a defendant at trial and, at the same time, preserve the safety of the community. *See* 18 U.S.C. § 3142(g). The factors considered by the court in making these determinations center on risk of flight and danger, and not on the determination of guilt and punishment. "The legislative history of the Bail Reform Act clearly indicates that Congress did not for-

mulate the pretrial detention provisions as punishment for dangerous individuals [but instead] perceived pretrial detention as a potential solution to a pressing societal problem." *Salerno*, 481 U.S. at 747, 107 S.Ct. 2095.

■ Our defendants wisely recognize that pretrial detention is not *per se* punitive and unconstitutional. But they nevertheless argue that the *length* of the pretrial detention here has become excessive in relation to its nonpunitive purposes. But the defendants are already protected from excessive pretrial detention by the Due Process Clause of the Fifth Amendment, which would allow for release if their detention runs too long.

■ The government agrees that pretrial detention may not be punitive. If an excessively long period of pretrial confinement exceeds due process limits, the defendants' remedy is not a motion to dismiss, particularly not a motion to dismiss on double jeopardy grounds. It is to seek review of the detention order. The Bail Reform Act, 18 U.S.C. § 3141 *et seq.*, allows a defendant to request reconsideration of his detention at any time. 18 U.S.C. §§ 3142(f) and 3145(b). This decision is in turn subject to review on appeal. 18 U.S.C. § 3145(c). *See United States v. Infelise*, 934 F.2d 103 (7th Cir.1991).

The defendants have not asked us to review their custodial status pursuant to 18 U.S.C. § 3145(c). They are seeking only double jeopardy relief. The strategy behind this approach is clear: dismissal on double jeopardy grounds would stop their prosecution altogether, whereas release because the statutory requirements for detention were not satisfied or on due process grounds may provide only a temporary interruption of their confinement. As a result of this strategic approach, and on the basis of this record, we do not address the due process concerns that may exist in this case.

That said, we are deeply concerned about the length of time these defendants

(in fact all the defendants in this case) have been in custody without a trial. To be sure, much of the delay is attributable to a mountain of motions filed by the defendants. This is not to fault them for aggressively defending these charges, but one cannot engage in trench warfare and then claim that the battle is taking too long. The government, also to be sure, is not blameless in causing this case to move at a snail's pace. Mixing too many defendants with too many charges is a surefire recipe for delay. But this case is complex, and we cannot put the blame for that solely on the government's doorstep. If the government's allegations (or even a substantial portion of them) are true, the defendants have been members of a long, wide, and murderous enterprise. Prosecuting a case of this sort takes a great deal of time. Nevertheless, if the trial of this case—through no fault of the defendants—is still not started when the flowers start to bloom next spring,[1] we think the district court will be obliged to consider ordering a less restrictive alternative to straight pretrial detention.

AFFIRMED.

---

1. We take judicial notice that after oral arguments were presented on this appeal, the dis-

trict court set the case on its trial calendar for March 8, 2000.