**Nicole HALIKIPOULOS, Petitioner,**

v.

**Dennis DILLION, District Attorney of Nassau County, Respondent.**

**Parask Vlepakis, Petitioner,**

v.

**Dennis Dillon, District Attorney of Nassau County, Respondent.**

Nos. 98–CV–3542, 98–CV–3544.

United States District Court, E.D. New York.

April 12, 2001.

Charles Giulini, New York City, for Petitioner.

Nassau County District Attorney's Office, by Tammy J. Smiley and Margaraet E. Mainusch, Asst. District Attorneys, Mineola, NY, for Respondent.

## MEMORANDUM OF DECISION AND ORDER

SPATT, District Judge.

These petitions for *habeas corpus* were filed pursuant to the provisions of 28 U.S.C. § 2241, seeking to bar the further prosecution of the Petitioners on the grounds of Double Jeopardy.

On July 25, 1996, the Petitioners were arrested for shoplifting and charged with Pettit Larceny, N.Y. Penal L. § 155.25. The Petitioners were each released on $500 police bail, and on August 6, 1996, were arraigned before Nassau County District Court Judge Joel Gewanter. Upon their plea of not guilty, Judge Gewanter continued the Petitioners' bail as previously fixed with the additional condition that they enroll in and complete a one-day "Stoplift" program, which the District Attorney describes as "a remediation and education program for beginning shoplifters."

The purpose—and indeed, the very operation—of the "Shoplift" program is not well-developed in the record before this Court. The sole evidence in the record regarding the operation and goals of the "Stoplift" program is a brochure included in the record on appeal to the Appellate Division, which reads in part:

**WHAT IS STOPLIFT?**

STOPLIFT is a unique remediation and education program for beginning shoplifters. During a full-day class, offenders examine their motives, learn about the legal consequences of continued shoplifting, and analyze the cost of their crimes to society-at-large.

[. . . . .]

**DO PARTICIPANTS RECEIVE ANY LONG TERM HELP?**

Yeseach class member meets individually with the social worker. During these meetings, the social worker will work with the shoplifter to identify any needs he/she may have. An additional referral to a community agency will be made when necessary.

Although the Petitioners' counsel objected to the "Stoplift" program as a condition of bail, citing Double Jeopardy concerns, the court observed that the program "is not considered by this Court to be punishment." On August 24, 1996, the Petitioners completed the one-day Stoplift program, including the payment of an $85 attendance fee.

The Petitioners then commenced an Article 78 proceeding in Nassau County Supreme Court, seeking to stay any further criminal prosecution on Double Jeopardy

grounds. On January 7, 1997, Nassau County Supreme Court Justice Edward T. O'Brien denied the application for a stay, stating:

> The Court is not persuaded that a requirement to attend a therapeutic program for shoplifters for persons charged with shoplifting is punishment without trial rather than a reasonable condition of bail as argued by the respondents. Moreover, if they are found guilty after trial, petitioners may make an application at sentencing to have their attendance at the shoplift program considered for any purpose.

The Petitioners appealed Justice O'Brien's decision to the Appellate Division, Second Department. On January 12, 1998, the Appellate Division affirmed the decision, finding that:

> The program was not a punishment, as the course did not serve the goal of either retribution or deterrence. Rather, the class was, by its terms, purely remedial in nature, with the result that the double jeopardy clause of the Fifth Amendment was not triggered.

*Vlepakis v. Dillon*, 246 A.D.2d 549, 667 N.Y.S.2d 435 (2d Dept.1998) (citations omitted). The Petitioners' sought leave to appeal from the New York State Court of Appeals, but leave was denied on April 7, 1998. *Vlepakis v. Dillon*, 91 N.Y.2d 812, 671 N.Y.S.2d 715, 694 N.E.2d 884 (1998) (table).

On May 12, 1998, the Petitioners filed these actions, each seeking a writ of *habeas corpus*, alleging that the "Stoplift" program constituted punishment and that further prosecution is barred by the Double Jeopardy clause of the Fifth Amendment.

## DISCUSSION

■■ The Double Jeopardy guarantee consists of three separate constitutional protections: it protects against a second prosecution for the same offense after ac-

quittal; it protects against a second prosecution for the same offense after conviction; and it protects against multiple punishments for the same offense. *North Carolina v. Pearce*, 395 U.S. 711, 717, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969). Because there has been no adjudication on the merits of the charges against the Petitioners, only the third protection could arguably apply here.

However, in *U.S. v. Warneke*, 199 F.3d 906, 907 (7th Cir.1999), the court questioned whether that guarantee could be vindicated where the defendant has yet to be prosecuted. Citing *Department of Revenue of Montana v. Kurth Ranch*, 511 U.S. 767, 114 S.Ct. 1937, 128 L.Ed.2d 767 (1994), a case in which a defendant convicted of drug crimes was subjected to a subsequent "drug tax" by the state based on the same criminal conduct, the court in *Warneke* recited "the fundamental principle that an accused must suffer jeopardy before he can suffer double jeopardy." 199 F.3d at 908. Describing a scenario more fitting to the facts of this case, the *Warneke* court stated that "if the tax had been levied prior to the drug prosecution, the Supreme Court would then have had to determine whether the taxing procedure resulted in the attachment of jeopardy." *Id.*

■ Therefore, the real question before this Court is whether jeopardy attached at the time the "Stoplift" program was imposed as a bail condition. *See e.g. Doyle v. Johnson*, 235 F.3d 956, 958 (5th Cir.2000), citing *Serfass v. U.S.*, 420 U.S. 377, 393, 95 S.Ct. 1055, 43 L.Ed.2d 265 (1975). This Court has grave doubts whether the *sua sponte* imposition of a bail condition can ever be sufficient to attach jeopardy. The Supreme Court has held that jeopardy only attaches when the defendant is "put to trial before a trier of facts." *Serfass*, 420 U.S. at 388, 95 S.Ct. 1055. According-

ly, pre-trial proceedings, such as the court holding an evidentiary hearing on a jurisdictional issue, do not result in the attachment of jeopardy, since "without the risk of a guilty verdict, there is no jeopardy." *U.S. v. Gamble*, 141 F.3d 621, 624 (6th Cir.1998); *see also U.S. v. Grisanti*, 4 F.3d 173, 175 (2d Cir.1993) (bail revocation hearing did not constitute jeopardy). The same rationale applies here: the setting of bail conditions does not expose a defendant to the risk of a finding of guilt, or even necessitate an adjudication of facts. Accordingly, it appears that the Petitioners fail to even assert a facial Double Jeopardy claim.

■ Although pressed as a Double Jeopardy claim, the Petitioners' argument is better characterized as a simple Due Process violation. *Bell v. Wolfish*, 441 U.S. 520, 536, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979) ("under the Due Process Clause, a detainee may not be punished prior to an adjudication of guilt in accordance with due process of law"). Although the Government may detain a defendant to ensure her presence at trial and may subject her to restrictions and conditions, those conditions may not amount to punishment. *Bell*, 441 U.S. at 536–37, 99 S.Ct. 1861. Put more simply, "due process requires that a pretrial detainee not be punished." *Id.* at n. 16.

■■ However, not all pre-trial detentions constitute "punishment." "Regulatory" bail conditions may be imposed without running afoul of the Due Process clause. *Bell*, 441 U.S. at 537, 99 S.Ct. 1861, *citing Kennedy v. Mendoza–Martinez*, 372 U.S. 144, 168–169, 83 S.Ct. 554, 9 L.Ed.2d 644 (1963). In the absence of legislative history indicating that a given condition is intended to serve punitive means, the determination turns on whether an alternative purpose to which the bail condition may rationally be connected is assignable for it, and whether it appears excessive in rela-

tion to the that alternative purpose. 441 U.S. at 538, 99 S.Ct. 1861; *U.S. v. Salerno*, 481 U.S. 739, 747, 107 S.Ct. 2095, 95 L.Ed.2d 697 (1987).

■ Turning to the question of whether an alternative, non-punitive purpose can be assigned to the bail condition set by the district court, it appears that New York State courts have traditionally viewed attendance at behavioral modification classes to be legitimate conditions of bail. *See People ex rel. Moquin v. Infante*, 134 A.D.2d 764, 521 N.Y.S.2d 580 (3d Dept. 1987) (granting bail on condition that defendant enroll in alcohol rehabilitation program); *People ex rel. Bryce v. Infante*, 144 A.D.2d 898, 535 N.Y.S.2d 215 (3d Dept. 1988) (bail conditioned on defendant resuming treatment with his psychotherapist); *People v. Bongiovanni*, 183 Misc.2d 104, 701 N.Y.S.2d 613 (1999) (bail requirement that defendant attend domestic violence was permissible). While the courts in these cases did not specifically address the issue of whether these conditions constituted "punishment," they appear to have implicitly found that the conditions serve a non-punitive purpose. For example, in *Bongiovanni*, the court observed that

Until there is a determination of guilt or innocence the court is responsible not only to seek justice by safeguarding the rights of the defendant; it must also insure that the complainant is secure and that societal peace is preserved during the pendency of the action. Directing a defendant to attend alternative to violence courses helps insure this. Rather than implying guilt, attendance at the program, in tandem with its educational benefits, reminds the defendant, as does the order of protection, that although at liberty, he is still bound by the dictates of the court, which can rescind his liberty on his failure to abide by those dictates. In requiring attend-

ance at such programs, the court feels it is less likely that a temporary order of protection will be violated. Such a condition thus assists the court in its responsibility to secure the peace and protect the family.

183 Misc.2d at 105–06, 701 N.Y.S.2d at 614.

Although the situation it addresses is certainly less dire than the problem of domestic violence, the "Stoplift" program serves similar objectives to the course discussed in *Bongiovanni*. By offering education about societal costs of shoplifting and the psychological motivations of shoplifters, the "Stoplift" program arguably safeguards merchants who might be at risk from defendants who are released pending trial. This Court does not see that directing an individual charged with shoplifting to the "Stoplift" program assumes guilt any more than the court directing an individual charged with domestic violence to a domestic violence education program assumes guilt. In both cases, the subject matter of the class is relevant to charges that have been found to be supported by probable cause, but neither class requires the defendant to admit guilt, apologize to the victim, or otherwise compromise or disregard a defendant's claim of innocence.

Accordingly, the Court finds that the "Stoplift" program can be assigned a rational, non-punishment purpose under *Bell*. Next, the Court must determine whether the bail condition is excessive in relation to that purpose. Here, the "Stoplift" program certainly presents a restraint on the Petitioners' liberty, albeit a relatively minor one. The Court considers the one-day "confinement" to the classroom to be a minimal imposition. Courts routinely approve bail conditions that pose much greater restraints to a defendant's liberty, such as requirements that the defendant secure full-time employment or repeatedly appear at a given place and time for drug testing. *See U.S. v. Carbone*, 793 F.2d 559, 561 (3d Cir.1986) (bail conditioned upon home detention and requirement of continued employment); *U.S. v. Nezaj*, 655 F.Supp. 1176 (S.D.N.Y.1987) (bail conditioned on enrollment in drug treatment program and daily drug tests). Once they completed the "Stoplift" program, the Petitioners were under no further restraint by the imposition of the condition; that is, they were not required to return for additional counseling or repeat classes, or to suffer any further consequences from their participation. Accordingly, the Court finds that although the condition imposed an affirmative restraint, it was of a minimal nature.

The Petitioners argue that the program also resulted in a "forfeiture" of the $85 attendance fee. The Court notes that the fee was payable not to the victims or to the Court as a fine or other punishment might be, but rather to the educational corporation sponsoring the program. In this regard, the Court considers the fee to be an expense incident to the bail condition itself, such as the cost of electronic monitoring, which is often imposed on a defendant as a condition of release on bail. *See e.g. U.S. v. Malloy*, 11 F.Supp.2d 583, 584 (D.N.J. 1998). Nor is the fee so grossly disproportionate to the value of the goods alleged to have been stolen by the Petitioners—$22 in one case, and $28 in the other—that it alone would constitute punishment. *Compare U.S. v. Halper*, 490 U.S. 435, 452, 109 S.Ct. 1892, 104 L.Ed.2d 487 (1989) (civil penalty 220 times greater than the damage caused by the crime was so disproportionate as to amount to a second punishment).

Moreover, this Court sees little difference between the imposition of $500 cash bail and the requirement that the Petitioners pay the program attendance fee themselves, and cash bail of $585 with the attendance fee being paid by the court. An

argument can be made that, had the additional $85 been paid as bail, it would be refundable. However, the Supreme Court has permitted courts to retain a percentage of a defendant's cash bail for "administrative cost[s]" without violating the Due Process clause. *Schilb v. Kuebel,* 404 U.S. 357, 370–71, 92 S.Ct. 479, 30 L.Ed.2d 502 (1971) (upholding a state statute permitting the court to retain 1% of money posted for court bail bonds). Therefore, it would be reasonably permissible for the state court to retain the Petitioners' extra $85 in bail for the "administrative cost" of supplying the program. Accordingly, the Court finds that the $85 attendance fee for the program does not constitute punishment prior to a finding of guilt in violation of the Due Process clause.

Given that the duration and cost of the "Stoplift" program are minimal, with no continuing disability or restraint imposed upon the Petitioners following their completion of the program, the Court finds that the class at issue is not an excessive burden in relation to its educational purpose. Under these circumstances, the Court concludes that attendance at the program as a condition of bail does not constitute "punishment" prior to trial in violation of the Due Process clause.

■ Finally, even if the Court were to find that the "Stoplift" program amounted to pre-trial punishment in violation of the Due Process clause, the proper remedy for such a denial is not the termination of all further prosecution. *See Warneke,* 199 F.3d at 908 ("They are seeking only double jeopardy relief. The strategy behind this approach is clear: dismissal on double jeopardy grounds would stop their prosecution altogether, whereas release ... on due process grounds may provide only a temporary interruption of their confinement."). The proper remedy for a violation of due process prior to trial is an injunction or money damages, not dismiss-

al of the charges or divestiture of the court's jurisdiction. *Id.; Matta–Ballesteros v. Henman,* 896 F.2d 255, 261 n. 7 (7th Cir.1990). Therefore, even if the Petitions were meritorious, this Court would nevertheless not grant the requested relief.

■ The Petitioners also argue in their brief that the bail condition violated New York's Criminal Procedure Law § 510.30, in that the condition was intended for some purpose other than to secure their attendance at trial. *Citing, e.g. Matter of Sardino v. State Commission on Judicial Conduct,* 58 N.Y.2d 286, 289, 461 N.Y.S.2d 229, 230, 448 N.E.2d 83 (1983). However, it does not appear that this contention was pressed before the state courts, and is thus not exhausted for purposes of these petitions. Moreover, an alleged violation of New York State's statutes does not necessarily create a federal Constitutional issue before this Court reviewable on a *habeas* petition.

## *CONCLUSION*

For the foregoing reasons, the Court finds that the imposition of the "Stoplift" class as a bail condition did not violate either the Double Jeopardy or Due Process clause. Accordingly, both petitions are DENIED. The Clerk of the Court is directed to close these cases.

**SO ORDERED.**