# PD-0031-15

PD-0031-15
COURT OF CRIMINAL APPEALS
AUSTIN, TEXAS
Transmitted 1/5/2015 3:59:08 PM
Accepted 1/14/2015 6:19:20 PM
ABEL ACOSTA
CLERK

# COURT OF CRIMINAL APPEALS

PD – _____ – 15

**Ex parte
DAVID LEE VICTORICK,
Appellant**

**On Discretionary Review from No. 09-14-00112-CR
Ninth Court of Appeals, Beaumont**

**Appealed From Trial Court No. 13-11-12323-CR
435TH Judicial District Court, Montgomery County**

# Motion To Extend Time To File Petition For Discretionary Review

FILED IN
COURT OF CRIMINAL APPEALS

JANUARY 14, 2015

ABEL ACOSTA, CLERK

L.T. "Butch" Bradt #02841600
14015 Southwest Freeway, Suite 4
Sugar Land, Texas 77478-3550
(281) 201-0700
Fax: (281) 201-1202
ltbradt@flash.net
Attorney for Appellant,
David Lee Victorick

1

To The Honorable Judges of the Texas Court of Criminal Appeals:

David Lee Victorick, Appellant, for good cause, moves for an extension of time of **31 days**[1] to file a petition for discretionary review and shows:

1.     On December 10, 2014, the Ninth Court of Appeals affirmed the Appellant's conviction.  *See David Lee Victorick v. State of Texas*, Docket No. 09-14-00112-CR, December 10, 2014. A copy of the judgment and opinion is attached to this Motion.  As the Court can see, the Ninth Court of Appeals also disposed of Appellant's appeal in Docket No. 09-14-00190-CR at the same time. While related, that appeal must be addressed separately.

2.     As Appellant did not file a motion for rehearing, his Petition for Discretionary Review is due to be filed on January 9, 2014.

3.     On December 11, 2014, counsel represented Juan Medina in the 308TH Judicial District Court of Harris County in Cause No.  2014-01703-J, *In the Interest of L.M. and J.M..*  This was a termination of parental rights proceeding wherein CPS was seeking to terminate Mr. Medina's parental rights. At the conclusion of the trial, Mr. Medina's parental rights were not terminated.

4.     Counsel's office was closed December 24 – 26, 2014, for

---

[1]     The 30TH day is a Sunday, therefore Appellant requests until the following Monday, the 31ST day.

Christmas. Counsel's office was closed from noon December 31 through January 2, 2015, for New Years.

5.     In addition to the foregoing, counsel was in trial on December 29, 2014, in the 212TH Judicial District Court of Galveston County, Texas, in Docket No. 12-CV-0026, *Spears v. Johnson*. In addition to a day-long trial, there was the usual time spent the preceding week preparing for trial, consulting with witnesses, preparing exhibit lists, etc..

6.     Counsel also had to prepare and file a motion for rehearing of the denial of a Petition for Review in the Texas Supreme Court in Docket No. 14-0562, *Olga de la Cerda Cabrera, et al v. Palisades Collection, LLC, et al*. The  Petition for Review was denied on December 19, 2014 so the Motion for Rehearing had to be filed on or before January 5, 2015.

7.     In addition to the foregoing, Counsel has had to research and prepare a Petition for Writ of Mandamus to the United States Fifth Circuit Court of Appeals as against the Honorable Sam Lindsay, U.S. District Judge, relating to an order signed by Judge Lindsay in Docket No. 03-07-2020-CV. This mandamus will be filed the week of January 5, 2015.

8.     On December 29, 2014, the Fifth Court of Appeals issued its majority opinion and dissenting opinion in Docket Nos. 05-13-00421-CR, 05-

13-00423-CR, 05-13-00424-CR and 05-13-00425-CR, *State of Texas v. Albert G. Hill, III*. Undersigned counsel spent a good portion of the day, December 30, 2014, researching the opinions and the dissents and discussing with co-counsel whether to move for rehearing, or rehearing en banc at the Dallas Court of Appeals or whether to proceed directly to this Honorable Court by way of Petition for Discretionary Review.

9.     And counsel is in the process of finalizing a Petition for Writ of Certiorari to the United States Supreme Court in the case of *David Lee Victorick v. State of Texas*, which results from the denial of Mr. Victorick's Petition for Discretionary Review to this Court in Docket No. PD-0807-14. As the Petition for Discretionary Review was denied on October 15, 2014, the Petition for Writ of Certiorari must be filed with the Supreme Court on or before January 13, 2015. As the Petition is being printed, it must be finalized and given to the printer no later than January 8, 2015.

10.     Counsel is also set for trial on the two-week docket beginning January 5, 2015, in Cause No. 2008-17249, *Bookmark Litigation Services vs. Robert Hinsley & Associates*, pending in the 164TH Judicial District Court of Harris County. Due to the age of the case, the court coordinator has advised that the case will be going to trial on this docket. The

trial is a jury trial and is expected to last 3 – 4 days.

11.    Although the Ninth Court of Appeals only issued one opinion, it disposed of Docket Nos. 09-14-00112-CR and 09-14-00190-CR in that single opinion. While the issues in the writ of habeas corpus are related to the direct appeal of Appellant's conviction, they are distinct and this requires that two separate Petitions for Discretionary Review be filed with this Honorable Court.

12.    Because of the foregoing, counsel for David Lee Victorick has not even been able to begin working on the two Petitions for Discretionary Review that he must file with this Court on behalf of Mr. Victorick. And, at the earliest, it will be the week of January 12, 2015, before he is able to begin this work.

WHEREFORE, PREMISES CONSIDERED, Appellant, David Lee Victorick, requests the Court to grant him an extension of 31 days, until February 9, 2015, in which to file his Petition for Discretionary Review herein. Appellant prays for general relief.

Respectfully submitted,
L.T. BRADT, P.C.


By: /s/ L.T. Bradt
L.T. "Butch" Bradt #02841600

5

14015 Southwest Freeway, Suite 4
Sugar Land, Texas 77478-3550
(281) 201-0700
Fax: (281) 201-1202
ltbradt@flash.net
Attorney for Appellant,
David Lee Victorick

**CERTIFICATE OF SERVICE**

I, the undersigned attorney, certify that a true and correct copy of the foregoing pleading was faxed to:

Honorable Brett Ligon, District Attorney
William J. Delmore, III, Ass't District Attorney
Jeff Hohl, Ass't District Attorney
207 W. Phillips, 2nd Floor
Conroe, Texas 77301
Fax: 936-760-6940
E-mail: bill.delmore@mctx.org

on January 5, 2015.

/s/ L.T. Bradt
L.T. Bradt

## *Court of Appeals*

## *Ninth District of Texas at Beaumont*

_____

### NO. 09-14-00112-CR
### NO. 09-14-00190-CR
_____

**EX PARTE DAVID LEE VICTORICK**

**and**

**DAVID LEE VICTORICK, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

_____

**On Appeal from the 435th District Court**
**Montgomery County, Texas**
**Trial Cause No. 13-11-12323 CR**
_____

**OPINION**

This matter involves two appeals filed by David Lee Victorick relating to his indictment and subsequent conviction for online solicitation of a minor.[1] *See* Tex.

---

[1]We have considered three related matters filed by Victorick. Initially, we dismissed a petition for a writ of mandamus wherein Victorick sought to compel the presiding administrative judge to grant Victorick's motion to recuse the trial

Penal Code Ann. § 33.021(c) (West 2011). On March 7, 2014, the trial court denied Victorick's pre-trial application for writ of habeas corpus asserting a claim of double jeopardy. Victorick filed a notice of appeal and requested that his trial be stayed pending the resolution of Appeal No. 09-14-00112-CR, but this Court denied the motion to stay. Victorick was tried, convicted, and sentenced to five years of imprisonment. Victorick filed a notice of appeal of the final judgment, docketed in Appeal No. 09-14-00190-CR. We affirm the order denying the application for a writ of habeas corpus and the judgment of conviction.

## ISSUES

Victorick presents two issues in Appeal No. 09-14-00112-CR (the pre-trial request for habeas relief). First, he contends a bond order that issued after his arrest

---

judge. *See In re Victorick*, No. 09-13-00483-CR, 2013 WL 5969469, at *1 (Tex. App.—Beaumont Nov. 6, 2013, orig. proceeding) (mem. op., not designated for publication). Next, we denied a petition for a writ of mandamus and prohibition filed by Victorick to compel the trial court to stay the trial pending the resolution of his appeal of the trial court's denial of a pre-trial habeas application challenging the facial constitutionality of the statute creating the offense for which he was indicted. *See In re Victorick*, No. 09-13-00550-CR, 2013 WL 6885130, at *1 (Tex. App.—Beaumont Dec. 30, 2013, orig. proceeding, [leave denied]) (mem. op., not designated for publication). Finally, we affirmed the trial court's denial of Victorick's facial challenge to the constitutionality of Texas Penal Code section 33.021(c). *See Ex parte Victorick*, No. 09-13-00551-CR, 2014 WL 2152129, at *1 (Tex. App.—Beaumont May 21, 2014, pet. ref'd) (mem. op., not designated for publication). In the habeas appeal now before us, we granted Victorick's motion to take judicial notice of the clerk's record filed in Appeal No. 09-13-00551-CR. *See Turner v. State*, 733 S.W.2d 218, 223 (Tex. Crim. App. 1987).

2

on a previous indictment, which did not go to trial, constitutes punishment under the Fifth Amendment's Double Jeopardy Clause because the bond contained oppressive and onerous conditions that infringed upon his constitutional rights. Second, Victorick contends the oppressive and onerous conditions of his pre-trial bond on the indictment under which he was tried constitute punishment for double jeopardy purposes. In a motion to dismiss and with a suggestion of mootness, the State argues that Victorick's conviction mooted the appeal of the denial of pre-trial habeas relief.

Victorick presents three issues in Appeal No. 09-14-00190-CR (appeal of his conviction). First, he challenges the legal sufficiency of the evidence to support his conviction. Second, he contends he was deprived of an impartial magistrate. Third, Victorick contends the procedural rules that apply to recusal proceedings deprived him of due process because the rules do not provide for an interlocutory appeal.

INDICTMENT AND CONVICTION

The State initially indicted Victorick for online solicitation of a minor under subsection (b)(1) of section 33.021 of the Penal Code. *See* Tex. Penal Code Ann. § 33.021. After subsection (b)(1) was found to be unconstitutional by the Texas Court of Criminal Appeals in *Ex parte Lo*, Victorick was re-indicted under subsection (c) of section 33.021 for knowingly soliciting a fifteen year old girl to meet him with the intent that she engage in sexual contact, sexual intercourse, or

3

deviate sexual intercourse with him. *See* 424 S.W.3d 10, 27 (Tex. Crim. App. 2013). Victorick entered a not guilty plea and a jury found the appellant guilty as charged, and assessed his punishment at imprisonment for five years.

## MOOTNESS

Before we address Victorick's appellate issues we consider the State's argument that Victorick's appeal of the denial of the pre-trial request for habeas relief is moot. As a general rule, a habeas appeal relating to pre-trial bail is mooted by the subsequent conviction of the defendant because upon his conviction the habeas applicant is no longer being subjected to pre-trial confinement. *See e.g., Martinez v. State*, 826 S.W.2d 620, 620 (Tex. Crim. App. 1992). Unlike a habeas claim concerning pre-trial bail in which the applicant seeks relief from an unconstitutional pre-trial confinement, if he is correct regarding his double jeopardy argument, Victorick may be entitled to relief from the sentence imposed in the judgment of conviction that has also been appealed to this Court. Therefore, Victorick's pre-trial request for habeas relief is not necessarily mooted by his conviction.

## DOUBLE JEOPARDY CLAIM

The indictment accusing Victorick of online solicitation of a minor under section 33.021(c) of the Texas Penal Code alleged, in part, that Victorick, on or about June 2, 2013, did "knowingly solicit by text message, K.E., a minor, to meet

4

the defendant, with the intent that K.E. would engage in sexual contact and sexual intercourse and deviate sexual intercourse with the defendant[.]" After indictment, Victorick filed an application for writ of habeas corpus in which he alleged that he was being illegally confined because "[t]he Court has set conditions of bond that are not only oppressive, they have denied him constitutionally-guaranteed rights." Victorick alleged that "Double Jeopardy forbids his trial on the present indictment." Victorick's petition for habeas relief contends that subjecting him to a trial and potential conviction and sentence for a second degree felony would violate the Double Jeopardy Clause's prohibitions against multiple punishments because he had already been subjected to punishment within the scope of the Double Jeopardy Clause by conditions of his bond that prohibited him from: (1) possessing any firearms; (2) contacting the alleged victim's family; (3) going within 100 yards of the residence of the alleged victim; (4) contacting any child under seventeen years of age; or (5) having any contact with any computer or internet connection. Victorick argues that the conditions of his bond effectively denied him his right to bear arms, to associate with his wife, to attend church, to move about freely and peaceably in public places, and to work. No evidence was offered in the pre-trial habeas hearing. The trial court denied the application.

The Fifth Amendment states that "[n]o person shall . . . be subject for the same offense to be twice put in jeopardy of life or limb. . . ." U.S. CONST.

amend. V. Victorick argues that placing him on bond under conditions that he contends are oppressive and onerous constitutes punishment for Fifth Amendment double jeopardy purposes. Citing *United States v. Jorn*, Victorick contends that judicial overreaching triggers double jeopardy protections. *See* 400 U.S. 470, 483-84 (1971) (plurality op.). *Jorn* held the Double Jeopardy Clause barred a re-trial after the trial court *sua sponte* discharged the jury without manifest necessity for calling a mistrial and without considering granting a continuance. *Id.* at 487. *Jorn* was a successive prosecution case in which jeopardy attached with the seating of the jury in the first trial and terminated when the trial court discharged the jury; jeopardy would attach a second time with the seating of a new jury, thereby implicating the Fifth Amendment's protection against successive prosecution. *See id.* at 484.

Victorick argues the trial court erred in failing to apply the *Jorn* successive prosecution concept, notwithstanding the fact that jeopardy attached only once in his case. Victorick contends without citing any authority that by referring to the complaining witness as the "victim" in the order setting conditions of bond, the trial court determined that he had committed a crime and the entry of the order functioned as an adjudication of guilt. The law of this state is well settled that with respect to a jury trial, jeopardy attaches when the jury is empaneled and sworn, and for a bench trial jeopardy attaches when the defendant pleads to the charging

instrument. *See Ortiz v. State*, 933 S.W.2d 102, 105 (Tex. Crim. App. 1996) (The constitutional prohibition against double jeopardy does not apply until the defendant enters a plea before the trier of facts.). Jeopardy does not attach in a preliminary hearing regardless of what facts may be determined during the proceeding. *See id.*

Nevertheless, when the defendant has been subjected to a single trial, "the Double Jeopardy Clause 'prevent[s] the sentencing court from prescribing greater punishment than the legislature intended.'" *Ervin v. State*, 991 S.W.2d 804, 807 (Tex. Crim. App. 1999) (quoting *Missouri v. Hunter*, 459 U.S. 359, 366 (1983)). Factors considered in determining legislative intent include whether two provisions imposing separate punishments are contained within the same statutory section, whether they are phrased in the alternative, whether they are named similarly, whether they have common punishment ranges, whether they have a common focus or gravamen, and whether that common focus tends to indicate a single instance of conduct, whether the elements that differ between them can be considered the same under an imputed theory of liability which would result in the offenses being considered the same under the *Blockburger* test, and whether there is legislative history articulating an interest to treat the offenses as the same or different for double jeopardy purposes. *Ervin*, 991 S.W.2d at 814 (citing *Blockburger v. United States*, 284 U.S. 299, 304 (1932)).

7

The State cites cases from other jurisdictions, which hold that conditional pre-trial release cannot be considered punishment for purposes of the Double Jeopardy Clause because it serves a remedial rather than a punitive purpose and a bond condition is not based on a determination of guilt. *See State v. Torres*, 890 So.2d 292, 296 (Fla. Dist. Ct. App. 2d Dist. 2004) (conditions of pre-trial release requiring accused to attend sex offender treatment were not punitive and double jeopardy did not attach); *accord Parent v. State,* 900 So.2d 598, 599-600 (Fla. Dist. Ct. App. 2d Dist. 2004) (special conditions placed on pre-trial release of DUI defendant did not bar further prosecution under the double jeopardy clause); *Halikipoulos v. Dillion*, 139 F.Supp.2d 312 (E.D.N.Y. 2001) (pre-trial release condition requiring defendant to attend "stoplift" counseling program did not constitute punishment and court rejected double jeopardy argument). While not binding on this Court, the cases are instructive of the result reached in other jurisdictions.

In Texas, the Code of Criminal Procedure provides rules for fixing the amount of the bond and the conditions of bond. Tex. Code Crim. Proc. Ann. arts. 17.15 (West 2005), 17.40 (West Supp. 2014). "The bail shall be sufficiently high to give reasonable assurance that the undertaking will be complied with." Tex. Code Crim. Proc. Ann. art. 17.15. In setting the amount of the bond, "[t]he power to require bail is not to be used as to make it an instrument of oppression." *Id.* The

8

magistrate considers "[t]he nature of the offense and the circumstances under which it was committed" and also considers "[t]he future safety of a victim of the alleged offense and the community. . . ." *Id*. In Texas, "a magistrate may impose any reasonable condition of bond related to the safety of a victim of the alleged offense or to the safety of the community." Tex. Code Crim. Proc. Ann. art. 17.40. Unlike the criminal offense of online solicitation of a minor that is contained within the Penal Code, the statutes that authorize a trial court to fix bail pending trial and to impose conditions on a defendant's pre-trial release on bail function to ensure the defendant's appearance at trial and to protect the community without requiring a finding of guilt. *Compare* Tex. Code Crim. Proc. Ann. arts. 17.15, 17.40, *with* Tex. Penal Code Ann. § 33.021(c). We conclude that the clear intent of the Legislature as demonstrated in the plain language contained in articles 17.15 and 17.40 was to permit a trial court to set reasonable conditions of bond as a requirement for pre-trial release and then to impose the penalty set out in the Penal Code for the offense if the defendant is later tried and convicted. *See Ervin*, 991 S.W.2d at 814.

Victorick argues that in his case, the trial court failed to follow the rules established by articles 17.15 and 17.40 of the Texas Code of Criminal Procedure and that the trial court imposed unreasonable conditions of bond. *See* Tex. Code Crim. Proc. Ann. arts. 17.15, 17.40. He argues that the conditions impacted his

9

freedoms as guaranteed by the Fifth Amendment to such a degree that he has been punished before trial for the acts alleged in the indictment. The proper method to challenge a punitive bail condition is by filing either a motion to reduce bail or an application for a writ of habeas corpus for a bail reduction. *See Stack v. Boyle*, 342 U.S. 1, 6 (1951) (the proper procedure for challenging bail as unlawfully fixed is by motion for reduction of bail); *Ex parte Young*, 257 S.W.3d 276, 278 (Tex. App.—Beaumont 2008, no pet.) (the accused may challenge the conditions attached to bail through a pre-trial writ of habeas corpus).

Victorick petitioned for pre-trial habeas relief, but he sought only relief from the indictment and did not seek habeas relief from the order setting ancillary conditions of bond. Furthermore, he submitted no evidence regarding the oppressive nature of the conditions of bond. During the hearing on his pre-trial habeas petition, the State argued that the bond conditions were reasonable because they related to safety of the victim and the community. Considering that the indictment accused Victorick of online solicitation of a member of his household, and the use of a computer, electronic or texting device, the trial court reasonably could have determined that temporarily prohibiting his use of the internet and contact with the victim's family was authorized by article 17.40, even though the conditions necessarily impaired Victorick's freedom to communicate electronically and to associate with his family. *See* Tex. Code Crim. Proc. Ann. art. 17.40.

10

Therefore, we conclude that the trial court did not err in denying the application for writ of habeas corpus. Accordingly, we overrule both issues raised by Victorick in Appeal No. 09-14-00112-CR.

## SUFFICIENCY OF THE EVIDENCE

In Victorick's first issue in Appeal No. 09-14-00190-CR (appeal of his conviction), Victorick challenges the sufficiency of the evidence to support his conviction of online solicitation of a minor. A person commits the offense of online solicitation of a minor if the person "over the Internet, by electronic mail or text message or other electronic message service or system, or through a commercial online service, knowingly solicits a minor to meet another person, including the actor, with the intent that the minor will engage in sexual contact, sexual intercourse, or deviate sexual intercourse with the actor or another person." *See* Tex. Penal Code Ann. § 33.021(c). Victorick argues the evidence at trial was insufficient to prove beyond a reasonable doubt that he did "knowingly solicit by text message, K.E., a minor, to meet the defendant, with the intent that K.E. would engage in sexual contact and sexual intercourse and deviate sexual intercourse with the defendant," as alleged in the indictment. Victorick contends that "communicating in a sexually explicit manner with a minor, even if with the intent to arouse or gratify the sexual desire of any person, is legal." He argues the evidence is legally insufficient to establish he violated the statute because the State

11

failed to prove beyond a reasonable doubt that he solicited K.E. to meet him and that he acted with the intent that K.E. engage in sexual contact.

The "*Jackson v. Virginia* legal-sufficiency standard is the only standard that a reviewing court should apply in determining whether the evidence is sufficient to support each element of a criminal offense that the State is required to prove beyond a reasonable doubt." *Brooks v. State*, 323 S.W.3d 893, 895 (Tex. Crim. App. 2010) (citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). In evaluating the legal sufficiency of the evidence, we review all the evidence in the light most favorable to the verdict to determine whether any rational fact finder could have found the essential elements of the offense beyond a reasonable doubt. *Brooks*, 323 S.W.3d at 902 n.19; *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007).

The jury is the ultimate authority on the credibility of witnesses and the weight to be given their testimony. *Brooks*, 323 S.W.3d at 894; *Penagraph v. State*, 623 S.W.2d 341, 343 (Tex. Crim. App. 1981). We give full deference to the jury's responsibility to fairly resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *Hooper*, 214 S.W.3d at 13. If the record contains conflicting inferences, we must presume that the jury resolved such facts in favor of the verdict and defer to that resolution. *Brooks*, 323 S.W.3d at 899 n.13; *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007). We also determine whether the necessary inferences are

12

reasonable based upon the combined and cumulative force of all the evidence when viewed in the light most favorable to the verdict. *Clayton*, 235 S.W.3d at 778. We may not substitute our judgment concerning the weight and credibility of the evidence for that of the fact finder. *King v. State*, 29 S.W.3d 556, 562 (Tex. Crim. App. 2000).

> Courts and juries no longer face the difficult task of excluding every reasonable hypothesis other than the defendant's guilt. Under the current standard of review, there is no reason to treat circumstantial evidence of an accused's mental state any differently than circumstantial evidence of other elements. Just as circumstantial evidence is reviewed under the same standard as direct evidence, circumstantial evidence of intent is reviewed under the same standard as circumstantial evidence of other elements.

*Laster v. State*, 275 S.W.3d 512, 521 (Tex. Crim. App. 2009). "As long as the verdict is supported by a reasonable inference, it is within the province of the factfinder to choose which inference is most reasonable." *Id.* at 523.

In 2013, Victorick was employed as a high school coach and teacher. A year before the events at issue in this appeal, Victorick's wife became concerned that Victorick might have developed a sexual attraction to K.E. His wife noticed that Victorick displayed a keen interest in the possibility that his step-daughter, K.E., might be sexually active and the wife observed what appeared to be inappropriate sexual remarks in text messages from Victorick to K.E. Victorick explained to his wife that he had been "referring to . . . basketball, teaching her how to shoot,

13

dribble better, things of that nature[]" and that is what he meant when he sent K.E. a text message saying that "he could show her things and do things that, you know, some of those boys couldn't." Mrs. Victorick believed her husband, but she put locks on K.E.'s door and she would stay up until Victorick went to bed "to make sure that he wasn't going in there and downloading from her phone[.]" There were times when Victorick was "acting like a jealous boyfriend[;]" for example, once he climbed a ladder to look into a neighboring cul-de-sac to observe K.E. and her boyfriend.

On the date of the offense, Victorick, his wife, and K.E. were attending a graduation party at a friend's home. Victorick was, according to his wife, "drinking excessively" at the party. After K.E. left the party and went to a nearby fast food restaurant with a boy, Victorick sent K.E. a text message asking, "Is your quickly done? Time to get back." K.E. responded, "I'm pretty sure all we did was go get ice cream." The exchange of messages between K.E. and Victorick continued as follows:

K.E.: We need water

Victorick: I.need then & sick me you willl love, where are you! Suck me!

K.E.: Never

Victorick: If you ever. You will h understand how good I I eat p[---]y, let me show you! You will. Love ir!!' Ask the others!!

K.E.: F[---] you

Victorick: Please let me eat you you will love, it quit f[---]ing, I love your, miore than you know!

K.E.: F[---]ing for

K.E.: Die[2]

K.E. showed the messages to Victorick's wife, who understood that it referred to oral sex. A few weeks thereafter, K.E. called 9-1-1 about a physical altercation she had with Victorick. During the call, K.E. told the dispatcher that Victorick grabbed her by her hair and shoved her into the furniture, and also that he was "trying to get me to do things with him . . . sexual things."

K.E. testified at trial that she did not believe Victorick was trying to have sex with her, and that she believed he could have sent the messages because he was trying to keep her from having sex with more people. She does remember, however, telling her mother that she was "creeped out" by her stepfather, and she agreed that she called 9-1-1. A clinical psychologist testified for the State. He stated that he had counseled hundreds of children who were victims of sexual abuse. With respect to the Victorick case, he observed the testimony of K.E., reviewed some but not all of the texts between Victorick and K.E, reviewed the statements given by K.E.'s mother and Victorick, and reviewed other items from

---

[2]We use brackets and dashes to note our omission of some letters due to the profane nature of the words.

15

the reports. Further, he testified that abusers often "groom" their victims "[t]o foster that dependence and to foster that trust so that they can not only abuse the child and have access to them, but to the extent that they do harm the child in some way, the child may not tell about it, may even have positive relationships toward the person related to ways that they've been manipulated." The psychologist stated that the testimony of K.E. that she did not want Victorick to get in trouble, or that she did not think the texts were intended to be sexual, or that she blamed herself, would be

> consistent with someone who has been groomed by a suspect, groomed to feel like, to the extent anything bad is happening, it's my fault, rather than the other person's fault, and groomed to take responsibility for that, rather than entertain the idea, which may be a hard idea to entertain, to the extent that a child wants to believe in their father and the goodness of their father and having a good relationship with the father, that can be a lot for a child to give up. And in some cases that I have worked on, they will try to deny or rationalize or even blame themselves for what's happening rather than believe that their father might be trying to hurt them.

A forensic examination of Victorick's phone revealed an exchange of thousands of messages between Victorick and K.E. prior to July 25, 2013. Included within the messages are statements that demonstrate Victorick's sexual interest in K.E.

In his brief on appeal, Victorick further argues that his communications before the date of the offense were not illegal, "no matter how salacious, vulgar,

16

inappropriate or sexually explicit any of the text messages that Mr. Victorick sent before June 2, 2013, may have been[.]" He argues that the text message sent from his phone when K.E. went to the fast food restaurant did not request that K.E. meet him. Victorick contends that his messages, which express a present desire to engage in oral sex, appear to have occurred after K.E. returned to the party because they were made after K.E. asked Victorick for water. The alleged presence of Victorick and K.E. being in the same building at the time Victorick sent the messages would not, however, negate the element of the offense that the person "knowingly solicits a minor to meet another person, including the actor" with the intent that the minor will engage in sexual contact. *See* Tex. Penal Code Ann. § 33.021(c). The jury could have reasonably concluded based upon the content of the messages, as well as the testimony and evidence in the record, that Victorick sent K.E. a text message that solicited K.E., a minor, to meet.

"Meet" is not defined in the statute. "Words not specially defined by the Legislature are to be understood as ordinary usage allows, and jurors may thus freely read statutory language to have any meaning which is acceptable in common parlance." *Vernon v. State*, 841 S.W.2d 407, 409 (Tex. Crim. App. 1992). "Accordingly, when determining the sufficiency of evidence to support a jury verdict, reviewing courts must not employ definitions of relevant statutory words which are different or more restrictive than the jurors themselves were legally

17

entitled to use." *Id*. Among its commonly understood terms, "meet" means, "to come near or in touch with by approach from another direction" and "in the basic sense pertinent here, [usually] implies no more than to come into the presence or company of whether by chance or design[.]" WEBSTER'S THIRD NEW INT'L DICTIONARY 1404 (2002). The jury could, using the ordinary understanding of the word "meet," find that Victorick solicited K.E. to meet him, and further that Victorick asked the victim to engage in a sex act that required physical contact between them.

Victorick argues that the text message, "I.need then & sick me you willl love, where are you! Suck me!", does not "solicit" K.E. "Solicit" is not defined in section 33.021 of the Texas Penal Code, and could be understood by the jury by its commonly defined terms, which include, "to approach with a request or plea" and "to endeavor to obtain by asking or pleading[.]" WEBSTER'S THIRD NEW INT'L DICTIONARY 2169 (2002). "Suck" is also found in the dictionary, and includes the meaning, "to draw in the mouth over or around an object. . . ." *Id.* at 2283. The part of "me" to which Victorick referred could be understood by the jury to mean his genitals, especially in light of another communication from Victorick to K.E. in which Victorick suggested that they engage in oral sex. The jury could, using the ordinary understanding of the word "solicit," find that Victorick asked or pleaded with K.E. to engage in oral sex.

18

Victorick contends that the evidence is legally insufficient because the mere presence of the text on his phone does not prove that he sent the message because there were college-age students at the party and one of them could have sent the message. The officer who examined Victorick's phone testified that it was password-protected. It was reasonable for the jury to infer that Victorick sent the message. His wife saw him use the phone that night, and Victorick sent sexually explicit messages to K.E. on many other occasions.[3] Because the inference that it was Victorick that sent the message from his password-protected phone was reasonable, the State was not required to exclude the possibility that someone else at the party used Victorick's phone to send the messages to K.E. *See Laster*, 275 S.W.3d at 521, 523.

Viewing the totality of the evidence and inferences in a light most favorable to the verdict, the jury could have reasonably inferred that Victorick sent the messages to K.E. *See Hooper*, 214 S.W.3d at 13. We conclude that the evidence is legally sufficient to support the verdict. Accordingly, we overrule issue one.

---

[3]The testimony and evidence indicated that Victorick—a 58-year-old high school teacher and coach—spied upon K.E. when she was with her friends; he snuck into her room at night while she slept; he used the "notes" function of his cell phone to record his own thoughts regarding her sexual activity and to record his sexual attraction to her; and he sent many other text messages to K.E. that included requests to be permitted to perform what a jury could reasonably conclude were sex acts.

IMPARTIAL TRIBUNAL

In his second issue in Appeal No. 09-14-00190-CR (appeal of his conviction), Victorick argues that the reference to the "victim" in the pre-trial order setting ancillary conditions of bond demonstrates that the trial judge pre-judged his guilt, and establishes that he was deprived of a fair and impartial tribunal, in violation of the Due Process Clause of the Fifth and Fourteenth Amendments. *See Tumey v. Ohio*, 273 U.S. 510, 523 (1927). "A fair trial in a fair tribunal is a basic requirement of due process." *In re Murchison*, 349 U.S. 133, 136 (1955).

The trial court used a pre-printed form that contained several references to the "victim" and "the victim's family" which Victorick argues indicates that the trial court pre-judged his guilt before the trial. The document imposes conditions but includes no factual findings. The document was not prepared for use before the jury, nor is there any indication from the record that the pre-trial order setting ancillary conditions of bond was ever shown to the jury. Additionally, during the trial, when Victorick objected to the prosecutor's reference to the complaining witness as "the victim" the trial court sustained the objection and instructed counsel to use the phrase "alleged victim" and instructed the jury that "any time . . . prosecutor uses the word 'victim,' that you take it as alleged victim." Therefore, we conclude that the record does not support Victorick's claim that the trial court deprived him of the presumption of innocence. We overrule issue two.

20

RECUSAL PROCEDURE

In his third issue in Appeal No. 09-14-00190-CR (appeal of his conviction), Victorick challenges the constitutionality of the recusal procedure contained in Rule 18a(a)(3) and 18a(j)(1)(A) of the Texas Rules of Civil Procedure. *See* Tex. R. Civ. P. 18a. Subsection (a)(3) of Rule 18a provides that a party may not seek recusal of the judge solely on account of the judge's rulings in the case in which his recusal is sought. *Id.* Subsection (j)(1)(A) states that an order denying a motion to recuse may be reviewed only for abuse of discretion on appeal from the final judgment. *Id.* Victorick argues that Rule 18a unconstitutionally denies a criminal defendant due process "[b]ecause the defendant will have been forced, as was Mr. Victorick, to a trial before a judge who has prejudged his guilt."

"Whenever we are confronted with an attack upon the constitutionality of a statute, we presume that the statute is valid and that the Legislature has not acted unreasonably or arbitrarily. [citation omitted] The burden rests upon the individual who challenges the statute to establish its unconstitutionality" as applied to him. *Rodriguez v. State*, 93 S.W.3d 60, 69 (Tex. Crim. App. 2002) (citing to *Ex parte Granviel*, 561 S.W.2d 503, 511 (Tex. Crim. App. 1978)); *Wood v. State*, 18 S.W.3d 642, 650-51 (Tex. Crim. App. 2000). Victorick has not established that the trial court prejudged his guilt. Furthermore, Victorick has not shown that Rule 18a

21

is unconstitutional as applied to him or as applied to some hypothetical third party. Therefore, we overrule issue three.

CONCLUSION

Having overruled all of the issues that have been raised by the appellant in his appeals, we affirm the order denying the application for a writ of habeas corpus and we affirm the judgment of conviction.

AFFIRMED.

_____
LEANNE JOHNSON
Justice

Submitted on November 10, 2014
Opinion Delivered December 10, 2014
Publish

Before McKeithen, C.J., Kreger and Johnson, JJ.

22

# IN THE NINTH COURT OF APPEALS

09-14-00112-CR

Ex Parte David Lee Victorick

On Appeal from the
435th District Court of Montgomery County, Texas
Trial Cause No. 13-11-12323 CR

## JUDGMENT

THE NINTH COURT OF APPEALS, having considered this cause on appeal, concludes that the order of the trial court should be affirmed. IT IS THEREFORE ORDERED, in accordance with the Court's opinion, that the order denying the application for a writ of habeas corpus is affirmed.

Opinion of the Court delivered by Justice Leanne Johnson

December 10, 2014

**AFFIRMED**

\*\*\*\*\*\*\*\*\*\*

Copies of this judgment and the Court's opinion are certified for observance.

Carol Anne Harley
Clerk of the Court